UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANKIE LIPSETT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>POPULAR, INC. d/b/a BANCO POPULAR,<br><br>Defendant. | Civil Action No. 22-cv-00811<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Frankie Lipsett, on behalf of himself and all others similarly situated brings this class action complaint against Popular, Inc. d/b/a Banco Popular ("Banco Popular" or "Bank"), and alleges the following:

## INTRODUCTION

1. This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Banco Popular, arising from the unfair and unconscionable assessment and collection of "overdraft fees" ("OD Fees") on accounts that were never actually overdrawn.

2. This practice breaches contractual promises made in Banco Popular's adhesion contracts.

3. In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that Banco Popular will only charge OD Fees on transactions where there are insufficient funds to cover them.

4. Banco Popular also breaches its duty of good faith and fair dealing when it charges fee in the above circumstance.

1

5. Banco Popular's customers have been injured by Banco Popular's improper practices to the tune of millions of dollars taken from their accounts in violation of their agreements with Banco Popular.

6. On behalf of himself and the Class, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## PARTIES

7. Plaintiff is a citizen and resident of Bronx, New York.

8. Defendant Banco Popular is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative Classes throughout the United States. Banco Popular has its headquarters at 85 Broad Street, New York, New York 10004.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of New York; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Banco Popular is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

# FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I. BANCO POPULAR CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

### A. Overview of Claim

11. Banco Popular issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for purchases, payments, withdrawals and other electronic debit transactions.

12. Pursuant to its Account Documents, Banco Popular charges fees for debit card transactions that purportedly result in an overdraft.

13. Plaintiff brings this cause of action challenging Banco Popular's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

14. Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Banco Popular immediately reduces accountholders checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because Banco Popular has already sequestered these funds for payment.

15. However, Banco Popular still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

16. Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Banco Popular later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance. These types of

3

transactions are APPSN Transactions.

17. Banco Popular maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Banco Popular sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

18. Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

19. That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

20. Still, despite keeping those held funds off-limits for other transactions, Banco Popular improperly charges OD Fees on those APPSN Transactions, although the APPSN

4

Transactions *always* have sufficient available funds to be covered.

21.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

22.     There is no justification for these practices, other than to maximize Banco Popular's OD Fee revenue. APPSN Transactions only exist because intervening checking account transactions supposedly reduce an account balance. But Banco Popular is free to protect its interests and either reject those intervening transactions or charge OD Fees on those intervening

transactions—and it does the latter to the tune of millions of dollars each year. But Banco Popular was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on these APPSN Transactions.

23. Besides being unfair and unjust, these practices breach contract promises made in Banco Popular's adhesion contracts—contracts which fail to inform accountholders about, and in fact, misrepresent, the true nature of Banco Popular's processes and practices. These practices also exploit contractual discretion to gouge accountholders.

24. In plain, clear, and simple language, the checking account contract documents covering OD Fees promise that Banco Popular will only charge OD Fees on transactions that have insufficient funds to "cover" that debit card transaction.

25. In short, Banco Popular is not authorized by contract to charge OD Fees on transactions that have not overdrawn an account, but it has done so and continues to do so.

### A. Mechanics of a Debit Card Transaction

26. A debit card transaction occurs in two parts. First, authorization for the purchase amount is instantaneously obtained by the merchant from Banco Popular. When a merchant physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an intermediary, to Banco Popular, which verifies that the customer's account is valid and that sufficient available funds exist to "cover" the transaction amount.

27. At this step, if the transaction is approved, Banco Popular immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

28. Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed

in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 22, 2009).

29. Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

30. Banco Popular (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization. After that, Banco Popular is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when Banco Popular may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046 (Nov. 17, 2009).

31. There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

### B.     Banco Popular's Account Documents

32.    Plaintiff has a Banco Popular checking account, which is governed by Banco Popular's Account Documents.

33.    Amongst the Account Documents which govern Plaintiff's relationship with Banco Popular is a document entitled, *Important Information about Your Popular Bank Consumer Deposit Account* ("Overdraft Disclosure"), attached hereto as Exhibit A.

34.    The Overdraft Disclosure states in pertinent part that Banco Popular uses an available balance to determine overdrafts, and when an accountholder uses a debit card funds are deducted to cover those purchases:

> **What you need to know about overdrafts and overdraft fees**
> This notice explains our standard overdraft practices. An **overdraft** occurs when you do not have enough money in your account to cover a transaction, but the bank pays it anyway. Currently, we can cover your overdraft in two different ways:
> 1. We have **standard overdraft practices** that come with your account.
> 2. We also offer **overdraft protection plans**, such as a link to a savings account, which may be less expensive than our standard overdraft practices. To learn more, please ask us about these plans.
>
> **What are the standard overdraft practices that come with my account?**
> We **do authorize** and pay overdrafts for the following types of transactions:
> - Checks and other transactions made using your checking account number
> - Automatic bill payments and/or recurring debit card transactions
>
> We pay overdrafts at our discretion, which means we **do not guarantee** that we will always authorize and pay any type of transaction. If we **do not authorize** and pay an overdraft, your transaction will be declined.
>
> **What fees will be charged if Popular Bank pays my overdraft?**
> Under our standard overdraft practices:
> - We will charge you up to **$34** each time that we pay an overdraft.
> - Also, if your account is overdrawn for 7 or more consecutive business days, we will charge an additional $5 per day.
> - We have a daily limit for charging up to five items. If you have more than five items overdraw your account in a single day, only the first five will be assessed a fee.
> - We will not charge you a fee if your account is overdrawn by $5 or less.

8

>**IMPORTANT:** We will not authorize and pay overdrafts for the following type of transactions unless you ask us to:
>
>   •   ATM and everyday debit card transactions

Exhibit A (emphasis in original).

35.     For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to cover those transactions—yet Banco Popular assesses OD Fees on them anyway.

36.     The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

37.     APPSN transactions are always initiated at the time the customer swipes the debit card when there are sufficient available funds in the account.

38.     In fact, Banco Popular actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

39.     All the above representations and contractual promises are untrue. In fact, Banco Popular charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that Banco Popular may impose OD Fees on any APPSN Transactions.

40.     The Overdraft Disclosure misconstrues Banco Popular's true debit card processing and overdraft practices.

41.     First, and most fundamentally, Banco Popular charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that Banco Popular will only charge OD Fees on transactions with

9

insufficient available funds to cover a given transaction.

42. Banco Popular assesses OD Fees on APPSN Transactions that ***do*** have sufficient funds available to cover them throughout their lifecycle.

43. Banco Popular's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Banco Popular's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

44. Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

45. Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what Banco Popular does when it re-debits the account during a secret batching posting process.

46. In reality, Banco Popular's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

47. At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, Banco Popular cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

48. Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Banco Popular does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, Banco Popular releases the hold placed on funds for the transaction for a split second, putting money back

10

into the account, then re-debits the same transaction a second time.

49. This secret step allows Banco Popular to charge OD Fees on transactions that never should have caused an overdraft—transactions that were authorized into sufficient funds, and for which Banco Popular specifically set aside money to pay them.

50. This discrepancy between Banco Popular's actual practices and the contract causes accountholders to incur more OD Fees than they should.

51. In sum, there is a huge gap between Banco Popular's practices as described in the Overdraft Disclosure and Banco Popular's practices in reality.

### C. Banco Popular Abuses Contractual Discretion

52. Banco Popular's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the Account Documents. In addition, Banco Popular exploits contractual discretion to the detriment of accountholders when it uses these policies.

53. Moreover, Banco Popular uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

54. Banco Popular uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### D. Plaintiff's Debit Card Transactions

55. As an example, on March 31, 2021, Plaintiff was assessed OD Fees for debit card transactions that settled on that day, despite the fact that positive funds were deducted immediately, prior to that day on March 29, 2021, for the transactions on which Plaintiff was assessed OD Fees.

11

**CLASS ACTION ALLEGATIONS**

56. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The proposed classes are defined as:

57. Plaintiff brings this action on behalf of himself and on behalf of all others similarly situated. The Class is defined as:

> All Banco accountholders, during the applicable statute of limitations, were charged OD Fees on APPSN Transactions on a Banco Popular checking account.

58. Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

59. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

60. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Banco Popular has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

a) Whether Banco Popular improperly charged OD Fees on APPSN Transactions;

b) Whether the conduct enumerated above violates the contract;

c) Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

d) The appropriate measure of damages.

61.     The parties are numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Class consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Banco Popular's records.  Banco Popular has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

62.     It is impracticable to bring members of the Class individual claims before the Court.  Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

63.     Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Banco Popular, as described herein.

64.     Plaintiff is a more than adequate representative of the Class in that Plaintiff is a Banco Popular checking accountholder and has suffered damages as a result of Banco Popular's contract violations.  In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

13

b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

65. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

66. Banco Popular has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

67. All conditions precedent to bringing this action have been satisfied and/or waived.

### BREACH OF CONTRACT INCLUDING THE COVENANT OF GOOD FAITH AND FAIR DEALING
#### (Individually and on Behalf of the Class)

68. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

69. Plaintiff, and all members of the proposed Class contracted with Banco Popular for checking account services, including debit card services.

70. Banco Popular breached promises made to Plaintiff and all members of the proposed class when as described herein, Banco Popular charged OD Fees as a result of transactions that did not overdraw a checking account, on APPSN Transactions.

71. In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to

their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

74. Banco Popular has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein.  Specifically, Banco Popular should not have used its discretion to charge OD Fees on APPSN Transactions. The Account Documents do not have a contract term permitting OD Fees on such transactions, nor multiple NSF Fees on the same transaction, and the documents are otherwise ambiguous as to any right for Banco Popular to charge OD Fees on APPSN Transactions.

75. Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

76. Plaintiff and all members of the proposed Class have sustained damages as a result of Banco Popular's breaches of the contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A. Certification for this matter to proceed as a class action on behalf of the Class;
B. Declaring Banco Popular's OD Fee policies and practices to be in breach of its contract with accountholders;
C. Restitution of all OD Fees and improperly assessed paid to Banco Popular by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;
D. Actual damages in an amount according to proof;
E. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;
F. For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and
G. Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  January 31, 2022	Respectfully submitted,

**REESE LLP**

By:	*/s/ Michael R. Reese*
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone:  (212) 643-0500
Facsimile:  (212) 253-4272
Email:  *mreese@reesellp.com*

**KALIEL GOLD PLLC**
Jeffrey D. Kaliel (to apply pro hac vice)
Sophia Gold (to apply pro hac vice)
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
*jkaliel@kalielpllc.com*
*sgold@kalielgold.com*

*Counsel for Plaintiff and the Proposed Class*